CITY OF PROVIDENCE *v.* THE MASTER, WARDENS, AND BRETHREN OF ST. JOHN'S LODGE.

The plaintiffs granted to the defendants, by deed, the right and privilege of erecting and constructing upon the Market House in said Providence, an additional story, and, to that end, to enter upon and pass through said Market House by themselves, their workmen and servants, and to do all and every act and thing necessary for the erecting and constructing said story, both in and about said house, and, having so erected and constructed said story, to have and hold, use, occupy and possess the same at all times, together with all the entries, passages and staircases necessary and convenient for the occupying, &c., until the plaintiffs should think proper to take the same into their possession, which it was provided they might do upon paying to the defendants for the said additional story and the roof the value thereof, at the time of taking the same into possession, as the same should be appraised, without regard to the central situation thereof,—held

That the right to occupy was not raised by implication under the granting part of the deed, but expressly conveyed in the *habendum,* and that the provisional right reserved to the grantors to take possession was a condition of the grant and not void for repugnance thereto.

That, if the parties could not agree upon an appraisement or upon the appointment of appraisers to ascertain the value of the story and roof according to the provisions of the deed, appraisers might be appointed for the purpose by the Court.

That the provision by which the right was reserved to the plaintiffs to take possession upon paying the appraisement, was not analogous to a mere executory contract of sale, where one party agrees to sell without any agreement by the other party to buy, and which is void for want of mutuality, but was a contract which the plaintiffs executed by letting the defendants into possession, and that the defendants, having accepted the deed, could not be permitted to say that a provision, on the faith of which the defendants had been let into, and had enjoyed the possession, was void.

BILL in Equity. The bill alleged that, on the 15th of May, 1797, James Arnold, Esq., Town Treasurer of the

Town of Providence being duly authorized by a vote of the freemen of said town, by his deed, " gave, granted and confirmed to the Master, Wardens and Brethren of St. John's Lodge of free and accepted Masons, No. 1, in the Town of Providence, the right and privilege of erecting and constructing upon the Market House in said Providence, an additional story, and, to that end, to enter upon and pass through said Market House by themselves, their workmen and servants, and to do all and every act and thing, necessary for the erecting and constructing said story, both within and about said house, and, having so erected and constructed said story, to have and hold; use, occupy and possess the same at all times, together with all the entries, passages and stair-cases necessary and convenient for the using and occupying, to and for the sole use and benefit of them, the said Master, Wardens and Brethren, until the Freemen of said Town, should think proper to take the same into their possession, according to the provisions following ; that is to say, if at any time, after the erecting and constructing said story, the Freemen of said Town should think proper so to do, it should and might be lawful for said Town to take the said story into their possession, upon paying to the said Master, Wardens and Brethren, for the said additional story and the roof, the value thereof at the time of taking the same into possession, as the same should be appraised, without regard to the central situation thereof.    Provided that the said Master, Wardens and Brethren should make and construct the jet of the roof of the said Market House of brick, and should keep the said roof and the additional story aforesaid, in good repair, during the time of their using and occupying the same, as aforesaid."

In pursuance of this deed, the defendants constructed the additional story and thenceforth used and occupied it.

The bill stated the succession of the City of Providence to the rights and privileges of the Town of Providence, and of the City Council to the rights of the Freemen of said Town ; and that on ——— day of ——— 1850, the said council thought it proper to take said story into their possession, and passed a vote to that effect ; that the plaintiffs requested a delivery of the story and offered to pay the value of the same, according to the provisions of the deed, and requested the defendants to join with them in appointing appraisers who should appraise the value thereof ; and that the plaintiffs proposed to the defendants that they should choose one appraiser, and the plaintiffs another, and that the two so chosen should choose a third, the appraisal of which three or any two of them should be final and binding upon the parties ; and that they offered to assent to any other fair mode of making an appraisal of said story and roof, according to the provisions of said deed ; with which requests and proposals the defendants refused to comply.

The prayer of the bill was that the Court would ascertain by themselves or by some persons by them appointed the value of said story and roof; or would appoint suitable persons as appraisers to appraise the same, or would order the defendants to choose an appraiser, who, with an appraiser to be chosen by the plaintiffs, should choose a third, the appraisal of which three or of any two of them should be taken to be the true value of the same, or that the Court would ascertain the value in any way, which they should deem meet; and for a decree ordering the defendants, upon payment of the sum so appraised, to deliver said story and roof into the possession of the plaintiffs.

City of Providence *v.* St. John's Lodge.

The defendants demurred to the bill generally for want of equity.

*Jenckes* in support of the demurrer.

This is a bill to enforce the specific performance of a contract. The conveyance to the St. John's Lodge is an absolute grant of an estate in fee, and the condition annexed to the grant, unless from its connection with the granting words, it is to be construed as a limitation of the grant, is void for repugnance on the ground that a freehold estate cannot revest without a conveyance. The fair construction is not to consider the condition, as a condition at law, but as a contract for repurchase upon an appraisal. The question is whether the court can enforce a contract for repurchase, where, by the contract, the terms of the repurchase are left to arbitration. The parties, being unable to agree between themselves, the Court is asked either to compel them to agree or to make an agreement for them. It has been settled that a Court. of Equity will not enforce a contract, any one term of which is referred to arbitrators, (2 Story's Eq. jur. § 1457.) By the contract, arbitrators are to be agreed upon by the parties to make the appraisal; and the Court can neither compel their appointment nor compel them to act if appointed. The reason is that the Court, though it can enforce a contract when complete, cannot supply the unsettled stipulations of a contract, any more than it can make the entire contract for the parties. *Street* v. *Rigby,* (6 Vesey, 815), *Milnes* v. *Gerry,* (14 Vesey 400), *Agar* v. *Macklew,* (2 Sim. & Stu. 418 and note.) There is no remedy for the parties unless they can agree. And there is no hardships in this. The plaintiffs have their consideration in the obligation of the defendants to keep the

roof in repair. If this were the case of two individuals, one of whom had sold the other a lot with a contract for re-purchase, at an appraised value, and the purchaser had built a house on it of three times its value, would the Court enforce the contract or would they not hold the parties bound to proceed amicably in the mode agreed unless some fraud or hardship were shown. There is no mutuality in the claim. They claim to compel us to surrender possession, but we cannot compel them to take possession and pay for the roof and story. It is a right reserved on one side. The specific performance of such a contract cannot be enforced, unless it is on the ground of fraud. Here no fraud is alleged in the bill, and no refusal on our part to agree to an appointment, except in one form, and what is vitally material, there has been no vote appropriating money for payment in case of an appraisal.

If the instrument under which we occupy this story is a lease, it has been terminated by the vote of the city to take possession, and the defendants are in the position of a tenant holding over, and are liable to rent beyond the amount stipulated in the contract, so that here there is no hardship. It is like a lease of land, to be built upon, where the lessor agrees to take the buildings at the expiration of the lease at an appraised value. It has been held that such a contract cannot be enforced in equity. *Whitlock* v. *Duffield and others*, (2 Edwards 366, 26 Wend. 55.) *Vanrenselaer's Heirs* v. *Penniman*, (6 Wend. 569). The parties are bound to execute their contract in the stipulated mode. Here the appraisal was to be made by appraisers to be agreed upon by the parties, for, even if the Court had power to appoint appraisers, there was no Court of Equity in the State when the contract was made,

*Ames & Payne, contra.* The Court can grant relief in this case, not only under the power to enforce specific performance, but also under their power to entertain a possessory bill for the restoration of a specific chattel, and on the ground of fraud, because there is a relation of trust and confidence between the plaintiff and the defendants, which has been violated. *Pemberton* v. *Pemberton*, (13 Vesey 297, 1 Story Eq. Jur. §511.–512. 2 ibid §708–709–710.)

The authorities, cited by the defendants, show that in a simple contract of sale, where the price is to be determined by arbitrators, either named in the contract or to be chosen in a prescribed mode, the price being an essential element of the contract, the Courts will not enforce it. This rule does not apply in this case for the following reasons.

1. There are no arbitrators named in the contract, and no specified mode of choosing them. The plaintiffs are to pay for the premises " as the same may be appraised." This appraisal may be by the parties themselves, by appraisers chosen by them, or by the Court. It is the same as an agreement to sell at a valuation or a fair valuation, in which, it is settled, that the value may be determined by the Court. The first case on this subject is *Cooth* v. *Jackson*, (6 Ves: 12), where the Court refused relief because the men had been agreed upon to fix the price, and it would be in derogation of the contract for the Court to interfere. In *Gaskrath* v. *Lowther*, (12 Ves. 106), the agreement was to sell at a fair valuation, and the Court decreed a specific performance. The distinction was recognized in *Milnes* v. *Gerry*, (14 Ves. 400.) Relief was refused in that case because the price was to be ascertained in a specified mode, and the Court by fix-

ing the price in a different mode would make a new contract.  In *Blundell* v. *Bretargh*, (17 Ves. 241), the arbitrators were named in the agreemement.  In *Wilks* v. *Davis*, (3 Merivale 507), the Court held that it would grant relief where the parties had simply agreed to a valuation without appointing any one to fix it.  In *Agar* v. *Macklew*, the mode for determining the value was fixed.  The words in this case "value as the same shall be appraised" are equivalent to the words "valuation" or "fair valuation," and leave it for the Court to make the valuation, unless the parties can agree upon some mode of doing it themselves.

2. The rule does not apply to contracts in which there has been a part performance.  The ground, on which relief was refused, in the cases cited, was that by the refusal, the parties would be left in *statu quo*.  Even parol contracts for the sale of land, which are void by the statute of frauds, will be enforced in equity if they have been partly performed, because a refusal to fulfil the contract in such a case is fraud, (2 Story Eq. Jur. §759, 760, 761, 762, 763).  The part performance in this case, is the letting the defendants into possession and occupation for sixty years, upon the stipulation that they would restore possession in conformity to their contract, and to construe that contract so as to exclude us, would be to visit upon us an enormous fraud.  If the Court to prevent fraud will disregard a statute, they certainly will not refuse to enforce a contract upon the same ground merely because it would interfere with one of their own rules.  Part performance takes an award of arbitrators out of the rule by which the Court refuse to enforce an award of arbitrators.  (Eq. Cases, Abr. 51).  *Emery* v. *Ware*, (5 Ves. 846), *Blundell* v. *Bretargh*, (17 Vesey 241), *Gourlay* v. *Somersel*, (19 Ves. 431.)

3. The rule applies only to contracts of sale and this is a contract of lease. The case of *Whitlock* v. *Duffield* cited by defendant is a contract for a renewal of a lease ; that is the sale of a term. The other cases are cases, in which a vendee wishes to obtain possession of land from the vendor, where the only effect of a denial of relief is to leave the parties *in statu quo.* This is a case between lessor and lessee. The lessee cannot deny the lessor's title, cannot take and hold the property under a lease and then refuse to return it according to the terms of the lease. The lessee is let into possession in confidence that he will return the land, when the term of his tenancy has expired. There is no such confidence between vendor and vendee. There is also this difference, the lessor loses his land and has no remedy at law ; the vendee loses nothing and has his action for damages for breach of contract. There is another difference. The main term in a contract of sale is the price, which represents the whole value of the thing sold, but in a lease the main terms are—not the rent—but the letting into possession on the one side, and the restoration on the other ; the payment for fixtures being a mere incident ; and on a failure to appraise, it would be fitter that the tenant should lose his fixtures, than the landlord his land, if either consequence is to ensue. If the contract cannot be performed according to its terms by accident, and still more by the fraud of the defendant, you will come as near as possible to it. Want of mutuality is not an objection that applies in a case of this kind. (2 Story Eq. Jur. §723, 790).

GREENE, C. J., delivered the opinion of the Court. The first question in this case arises upon the construction of the grant. The defendant's counsel contends

that the words of the granting part of the deed, if contained in a deed to an individual, would convey a life estate, but the deed being to a corporation, they convey an estate for the life of the corporation, in other words a fee, and that the *habendum* being contradictory to the grant, as thus construed, is void.

The city grant to the Lodge the right to build, but the right to occupy is not granted in this part of the deed unless it be by implication.

And this implication is rebutted in the clause immediately following, which grants the incidental right to pass through the Market House, in order to erect the story, but for no other purpose. Now, if the intent of the parties had been, under the express grant of a right to build, to convey by implication a right to occupy, they would have made the incidental right of passage through the Market House commensurate with the principal grant. The limit which they put on the grant of the incidental right defines the extent of the grant of the principal right.

And this view is confirmed by the language of the *habendum*, which contains an express grant of the right to occupy. It can hardly be supposed that the parties intended to leave to implication from one part of the deed, what is expressly granted in another part.

And this express grant of the right to occupy is accompanied with a grant of the incidental right of passage through the Market, restricted to purposes of occupation only, thus showing that the parties intended to leave the right to occupy upon the express grant in the *habendum*, and that no implication of such right was intended to be raised from the grant of the right to build, in the previous part of the deed.

The *habendum* in this deed is peculiar. Ordinarily, this part of the deed does not purport to grant, but to define what has been before granted. The *habendum* of this deed, is as follows : " And having so erected and constructed said story, to have, hold, use, occupy, &c., the same." The words, " to have, hold, &c.," are connected with the previous words, " grant and confirm." The Town grant to the Lodge the right to build, and, having built, the right to occupy the same.

The construction contended for by the defendant's counsel annihilates the last clause in the deed. And then, it may be asked, what becomes of the right to pass through the Market house in order to occupy, the grant of this right being in that part of the deed, which upon the argument of the defendants counsel is void.

We think the deed grants two things, first the right to build, next the right to occupy. This is done by distinct clauses which harmonize with each other, and to each of which full effect can be given by a plain and reasonable interpretation.

By the terms of the deed, whenever the freemen of the Town shall think proper to take possession of the story, it shall be lawful for them so to do, upon paying to the Lodge for the same and the roof the value thereof, at the time of taking the same into possession, as the same shall be appraised, without regard to the central situation thereof.

The bill alleges that, by the charter of the City of Providence, the plaintiffs have succeeded to the rights of the Town of Providence, and, by the same charter, the City Council of Providence have succeeded to the rights and privileges of the freemen of the Town of Providence; and it, therefore, devolves upon said City Coun-

cil to decide when it should be proper for the plaintiffs to take said additional story into their possession, according to the provisions of said deed.

It further alleges that on the      day of      A. D. 1850, the said City Council did think it to be proper for the plaintiffs to take said story into their possession, and did pass a vote to that effect, and that the plaintiffs were then and always have been ready to pay the value of said story and roof, according to the provisions of said deed, and have requested the defendants to deliver to the plaintiffs the possession of said roof and story, and have offered to pay them the value of the same, according to the provisions of said deed. The bill, after stating an offer of one made of selecting appraisers, alleges that the plaintiffs had offered and were ready to agree upon any other fair and impartial mode of obtaining an appraisal.

It is said by the defendant's counsel, the offer to pay does not appear to have been made by persons authorized to make it ; but we think on general demurrer the allegation is sufficient.

The counsel for the defence contends, that this is a bill to enforce performance of a contract of sale and that the contract cannot be enforced, because no price is agreed upon.

It is undoubtedly true that a Court of Equity will not enforce a contract of sale, where the price is to be fixed by the parties or by arbitrators to be chosen by the parties ; and for the plain reason, that the contract sought to be enforced is incomplete in an essential particular, and the Court have no power to substitute themselves or a master to fix the price, in the place of the parties or of arbitrators to be chosen by the parties. This would

City of Providence *v*. St. John's Lodge.

be not to enforce an existing contract of the parties, but to make one for them. (2 Story's Eq. Jur §1457) *Cooth* v. *Jackson*, (6 Vesey 11), *Milnes* v. *Gerry*, (14 Vesey 407), *Agar* v. *McKlew*, (2 S. & S. 418.)

This argument assumes that, by the true construction of the deed, the appraisers were to be chosen by the parties. If they so intended, it is somewhat singular, the mode by which the choice was to be made had not been provided, so that an appraisement could be made. They have been careful to fix the principle on which the appraisment is to be made, that is, the value at the time of taking possession, and without regard to the central situation of the building, but leave every thing unsettled as to the mode of selecting the appraisers.

We think the parties have agreed to an appraisment, and, whether made by appraisers chosen by themselves or appointed by the Court, it is equally an appraisment in the sense of the contract. We think the language of the present deed is of the same import as to pay at a valuation or fair valuation, which is the same thing. Appraisment is fixing the value, and when the agreement is to pay the value as appraised, and no mode of choosing appraisers is agreed upon and there is nothing in the contract to show that the choice of appraisers was to be made by the parties, we think it is the duty of the Court to ascertain the value by appointing appraisers.

In *Morse* v. *Merest*, (6 Madd. 25,) Sir John Leach says : "it is to be observed, a covenant to pay for land by valuation implies the intervention of others as appraisers, and the appropriate tribunals may reasonably be resorted to, when the parties have not named them.

In *Wilkes* v. *Davis* (3 Merivale 509,) Lord Eldon held, that when the parties have agreed as to a valuation, but

have not appointed any persons to make the valuation, the Court will itself interfere, so as to ascertain the value in order to direct a specific performance.

The same doctrine is recognized by Sir William Grant, in *Milnes* v. *Gerry* (14 Vesey 407,) and by assistant Vice Chancellor Hoffman in *Whitlock* v. *Duffield*, (1 Hoffman 130.) So also in *Gaskrath* v. *Lowther* (12 Vesey 106,) the Court appointed a master to make a fair valuation, the offer being to sell at a fair valuation.

We have adverted to these authorities to show that if the present case was a contract of sale upon the language of this clause of the lease, the Court would be bound to appoint appraisers to estimate the value.

It is further contended by the counsel for the defendant, that as a contract of sale it is void for want of mutuality, the lessors having their option to take possession, when they choose, and the lessees being obliged to sell, when the lessors elect to take possession.

The improvements in this case are not buildings, which can be moved off by the lessees, at the termination of the lease. The roof and story, which have been put on the market house, are inseparably affixed to the building and cannot be severed from it. The title to these improvements necessarily vests in the lessors, as owners of the soil and building, subject to the claim of the lessees for their value as the same shall be appraised.

This appraisement is not so much a proceeding to fix a price for a sale, as an assessment of the amount the lessees are justly entitled to for what they have put on the lessor's estate. The lessors, it is true, are not obliged to determine the lease until they choose to do so, and are not obliged to pay until they determine the lease.

But the right to take possession upon paying the ap-

praisement is reserved to the lessors by the lease and is a condition which attaches to the titles of the lessees, under which they have gone into possession and long enjoyed it. Having accepted the title and enjoyed the possession under it, they cannot now be permitted to say this condition is void. If they thought the provision unequal, by leaving it at the will of the lessors to pay and take possession, they should have refused to accept it.

It is to be observed, the lease is a deed poll, the lessees have not executed it and it was not intended they should. They are under no obligation, therefore, except what results from the condttion of the lease and their acceptance of it and possession under it.

The argument of the defendant's counsel, upon this part of the case, seeks to set up the provision so far as it bars the plaintiffs from possession until they have paid the appraisement, but repudiates it as void so far as it provides any mode by which the amount to be paid can be ascertained.

We do not think the case at all analogous to a contract of sale, in which A agrees to sell to B, but B does not agree to buy. Such a contract is entirely executory. In the present case the contract has been executed so far as the lessors are concerned. The lessees have been let into possession and have long enjoyed it. They cannot now be permitted to say that a provision in the lease, on the faith of which they have been let into and have enjoyed the possession, is void.

*Demurrer overruled.*